## Staunton.

### Berlin v. Melhorn.

#### Absent, *Moncure*, P.

1. After a judicial sale has been absolutely confirmed by the court which ordered it, it will not be set aside, except for fraud, mistake, surprise, or other cause for which equity would give like relief if the sale had been made by the parties in interest, instead of by the court.

2. Where the objection is to the confirmation, the rule is more liberal. As to the principles applicable to such a case, see *Brock v. Rice and others*, 27 Gratt. 812.

3. The court, in acting upon a report, does not exercise an arbitrary, but a sound legal discretion in view of all the circumstances. It is to be exercised in the interest of fairness, prudence, and with a just regard to the rights of all concerned.

4. For the principles applicable to the opening of biddings, see *Randabush v. Miller*, 32 Gratt. 454, 465.

This is an appeal from a decree of the circuit court of Rockingham county, rendered on the 2d day of July, 1880, in a chancery cause in which C. J. Ergenbright was complainant, and Jacob Ammon's administrator and others were defendants.

In October, 1870, Christena J. Ergenbright instituted a chancery suit in the circuit court of Rockingham county against the administrator and heirs of Jacob Ammon, deceased, to recover a sum of money alleged to be due from him as her late guardian. On the 23d of November, 1876, a decree was entered directing certain real estate of the said decedent to be sold for the payment of his debts; and in February, 1877, the commissioner of sale offered the Ore

Bank tract at public auction, when J. W. Melhorn, trustee for T. C. Melhorn, who was his wife, and one of the heirs ·of the said Jacob Ammon, became the purchaser at the price of $2,300. The sale was reported to court and confirmed on the 20th of February, 1877. Default being made in the payment of the purchase money, a rule was awarded on the 15th of February, 1878, to show cause why the land should not be resold, and no cause being shown, the court ·ordered a resale. The land was repeatedly advertised without effect, when finally on the 5th of June, 1880, G. W. Berlin became the purchaser at the price of $850, and the sale was .approved and confirmed by the court on 16th of the same month. But on the 2d of July, 1880, the said Melhorn in ˙his own name made an advance bid of $250 for said land, to which the said Berlin excepted, but the court, without assigning any reason, overruled the exception, set aside the decree confirming the sale to Berlin, accepted the upset bid of Melhorn, and directed a resale of the property.

From this decree the said G. W. Berlin obtained an ·appeal and *supersedeas* from a judge of this court.

*G. W. Berlin*, for appellant.

*G. G. Grattan* and *W. B. Compton*, for appellee.

BURKS, J., delivered the opinion of the court.

This is a contest between successive purchasers of the same land under decrees of court.

Upon default by Melhorn, the first purchaser, the land was ordered to be resold, and at the offering Berlin was the best bidder. The commissioner conducting the sale made report of the fact to the court, and the court confirmed the report. Afterwards and during the term at which the order of confirmation was made, Melhorn offered an advance on

Berlin v. Melhorn.

Berlin's purchase; and thereupon the court, without assigning any reason, by its decree set aside the order of confirmation, and directed the land to be again exposed to sale at the price offered by Melhorn, as an upset bid.   Berlin, on appeal allowed him, complains of this decree.   We are of opinion that he has just grounds of complaint.

We think it may be safely laid down, as a general rule, deducible from the authorities, that after a judicial sale has been absolutely confirmed by the court which ordered it, it will not be set aside except for fraud, mistake, surprise, or other cause for which equity would give like relief, if the sale had been made by the parties in interest, instead of by the court.   But where the objection is to the confirmation, the rule is more liberal.

The principles applicable to such a case have been affirmed by several recent decisions of this court.   In the opinion of the court by Judge Staples, in *Brock* v. *Rice and others*, 27 Gratt. 812, it is said that " a decree of confirmation is a judgment of the court which determines the rights of the parties.   Such a decree possesses the same force and effect of any other adjudication by a court of competent jurisdiction.   But before confirmation the whole proceeding is *in fieri*, and under the control of the court.   Until then, the accepted bidder is not regarded as a purchaser. His contract is incomplete, and he acquires by his bid no independent right to have it perfected. * * * * * *

" Whether the court will confirm the sale must, in a great measure, depend upon the circumstances of each particular case.   It is difficult to lay down any rule applicable to all cases ; nor is it possible to specify all the grounds which will justify the court in withholding its approval. * * * *

" The court, however, in acting upon a report of sale, does not exercise an arbitrary, but a sound legal discretion, in view of all the circumstances.   It is to be exercised in the interest of fairness, prudence and with a just regard to the

rights of all concerned.   See *Taylor* v. *Cooper*, 10 Leigh, 317;
*Daniel* v. *Leitch*, 13 Gratt. 195, 211, 214; *Blossom* v. *Railroad
Company*, 3 Wall. U. S. R. 205, 6, 7; Rorer on Judicial Sales,
and cases at pages 30, 55, 56."

And in discussing these principles in their application to
the opening of biddings before confirmation, Judge Ander-
son, speaking for the court in *Roudabush* v. *Miller and others*,
32 Gratt. 454, 465, said that "in a proper case, where it
would be just to all the parties concerned, this court may
be understood as having sanctioned a practice in the circuit
courts, in the exercise of a sound discretion, of setting aside
a sale made by commissioners under a decree, and reopen-
ing the biddings upon the offer of an advance bid of a suffi-
cient amount deposited or well secured ; and to that extent
the former English practice had been allowed in this State.
But it has never been held imperative upon the courts to
set aside the sale and reopen the bids.   It is a question ad-
dressed to the sound discretion of the courts, subject to a
review of the appellate tribunal, and the propriety of its
exercise depends upon the circumstances of each case, and
can only be rightfully exercised when it can be done with
a due regard to the rights and interests of all concerned—
the purchaser as well as others.

An examination of the facts and circumstances of the
present case will disclose the error in the decree.

Melhorn, the new bidder, was a defaulting purchaser at
a prior sale.   In making the purchase he had submitted
himself to the jurisdiction of the court in the cause as to
all matters connected with the sale or relating to him in
the character of purchaser.   *Clarkson* v. *Read and others*, 15
Gratt. 288, 291.   Upon default made, the court took the usual
course, according to our practice, of ordering a resale of the
land.   After the confirmation of the sale, he was in equity
the owner of the land, subject to the lien retained for the
purchase money, and the land was ordered to be resold as

Berlin v. Melhorn.

his land. When, therefore, he made the advance bid he was offering to repurchase his own land at a less price than he had bound himself to give at the first sale. He did not object to the confirmation of the sale to Berlin on the ground of fraud, mistake, surprise, irregularity in the sale, or for any specified cause. He merely contented himself with offering an advance without even alleging that the price bid by Berlin was inadequate. He did not even except to the report of the sale, and suffered it to be confirmed without objection, nor did he make a bid until more than two weeks after the confirmation. We think that while it was in the power of the court at any time during the term to set aside the sale, this should not have been done, under the circumstances, except upon good cause shown, and that the mere (though secured) offer of a larger price by a defaulting purchaser was not good cause. The price at which Melhorn purchased at the first sale was evidently more than the land was worth. This is stated by the commissioner in his report and therefore he recommended a confirmation of the sale.

It appears that the other lands of the decedent (Ammon) had been divided among his heirs, and it is shown by their written agreement that Melhorn (who married one of them) purchased the land in their interest, with the view probably, as suggested, to get time on the payment of the debts against the estate. The resale was advertised in the newspapers in conformity to the decree, and as no bidders appeared on the first day fixed for the sale, the advertisement was renewed from time to time with like result on five several occasions, and the land was finally sold after the sixth advertisement. Melhorn, as well as his sureties, who were also interested as heirs and co-purchasers, must have had knowledge of these repeated efforts to make sale. They resided in the county where the land lay and where it was advertised. Indeed, it is admitted by Melhorn's counsel in his brief that Melhorn was present at each offering except

the last. And yet neither he nor they offered to buy. The longer the sale was deferred the more time they gained to meet the claims of the creditors. It was to their interest therefore and against the interest of the creditors to delay the sale. If it was competent for Melhorn to become a bidder for his own land directly to the court, it was equally as competent for him to bid at any of the numerous offerings that were made. As he was absolutely bound on the first purchase he could afford to bid a less sum on the resale, and if he became the purchaser a second time, he might on a second default again bid a higher sum than before, but still less than the original price, and so on from time to time upon repeated resales ordered, and thus postpone the ultimate realization of the purchase money indefinitely, unless previously collected by suits at law on his personal obligations.

The report of the commissioner shows, as before stated, that the price obtained at the first sale was more than the land was worth, and there is nothing in the record to show that the sum bid by Berlin was not the full value of the land. The advance offered by Melhorn, for the reasons stated, is no evidence of the true value. There were no affidavits or depositions taken as to the value and no statement or even suggestion in the record that Berlin's bid was inadequate. The land was assessed for taxation in 1879 at $3 per acre. Berlin's bid was upwards of $4 per acre.

The commissioner in his reports states that he had made repeated efforts to sell, that the sale to Berlin was the best he was able to make, and recommended its confirmation. His recommendation was at first adopted by the court without objection or exception from any quarter, and the order of confirmation should not have been disturbed. The last decree of the circuit court will therefore be reversed and the sale to Berlin will stand confirmed.

DECREE REVERSED.